Daniel F. Fears, State Bar No. 110573
dff@paynefears.com
Andrew K. Haeffele, State Bar No. 258992
akh@paynefears.com
Philip K. Lem, State Bar No. 282480
pkl@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendant CVS RX SERVICES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE GAILEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CVS RX SERVICES, INC., a New York Corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:20-cv-04086<br>[Contra Costa County Superior Court Case No. CIVMSC20-00840]<br><br>**PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332 AND 1441**<br><br>Trial Date:   Not Set |

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF DIANE GAILEY AND HER COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that Defendant CVS RX Services, Inc. hereby removes this action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California, on the following grounds:

## I. INTRODUCTION

1. This Court has jurisdiction over this action because complete diversity exists between Plaintiff Diane Gailey ("Plaintiff") and Defendant CVS RX Services, Inc. ("CVS").

2. Plaintiff is a citizen of the State of California, and was a citizen at the time of the filing of her Complaint.

3. CVS Rx Services, Inc. is now, and was at the time this action was commenced, a citizen of the State of New York and a citizen of the State of Rhode Island within the meaning of 28 U.S.C. section 1332. At all material times, CVS Rx Services, Inc. was a corporation organized under the laws of the State of New York, and at all material times CVS Rx Services, Inc. has maintained its principal place of business, including its corporate headquarters, in the State of Rhode Island.

4. Plaintiff's Complaint, on its face, contemplates a matter in controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Pursuant to 28 U.S.C. section 1446(b), this case is being removed within thirty (30) days of CVS's receipt of a document (the "Complaint") where diversity of citizenship is apparent.

## II. THE STATE COURT ACTION

6. On or about May 13, 2020, Plaintiff filed an action against CVS designated as "DIANE GAILEY, an individual, Plaintiff, v. CVS RX SERVICES, INC., a New York Corporation; and DOES 1 through 50, inclusive, Defendants" in the Superior Court of the State of California, County of Contra Costa, Case No. CIVMSC20-00840 (the "State Court Action"). A true and correct copy of the Summons and Complaint is attached to the Declaration of Andrew K. Haeffele ("Haeffele decl.") as **Exhibit "A."** CVS was served with copies of the Summons and Complaint on May 20, 2020. ***See Id.***

7. In her Complaint, Plaintiff alleges the following causes of action: (1) Failure to Pay Wages Owed Including Overtime Pay (*Cal. Lab. Code §§ 510 1194,*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1198, 1771, 1174 and California Wage Orders); (2) Failure to Pay Wages for Missed Meal Periods (*Cal. Lab. Code § 226.7*); (3) Failure to Pay Wages for Missed Rest Periods (*Cal. Lab. Code § 226.7*); (4) Inaccurate Wage Statement Penalties (*Cal. Lab. Code Section 226*); (5) Waiting Time Penalties (*Cal. Lab. Code §§ 201, 202, 203*); and (6) Unfair Competition (*Cal. Bus. & Prof. Code §§ 17200 et seq.*).

8. The Summons and Complaint constitute the pleadings, process, and orders served on or by CVS in the State Court Action.

## III. COMPLETE DIVERSITY EXISTS BETWEEN PLAINTIFF AND CVS

9. The Complaint, and each cause of action alleged therein, may be properly removed on the basis of diversity jurisdiction, in that this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

### A. Plaintiff is a Citizen of the State of California

10. Plaintiff is now, and was at the time this action was commenced, a citizen of the State of California within the meaning of U.S.C. § 1332(a) -- her place of residence and domicile are, and were, located within the State of California. *See* Complaint, ¶9; *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is his permanent home, where he resides with the intention to remain or to which he intends to return."); *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (explaining that residency creates a rebuttable presumption of domicile for purposes of establishing diversity of citizenship).

### B. CVS Rx Services, Inc. is a Citizen of the States of New York and Rhode Island

11. If a party is a corporation, it is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

12. CVS Rx Services, Inc. is now, and was at all material times, a corporation organized under the laws of the State of New York. Therefore, CVS Rx

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Services, Inc. is a citizen of New York.

13. CVS Rx Services, Inc.'s principal place of business is located in Woonsocket, Rhode Island. 28 U.S.C. §1332(c); *Hertz Corp*., 130 S. Ct. at 1192 ("[W]e conclude that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").

14. CVS Rx Services, Inc. is now, and was at all material times, headquartered in Woonsocket, Rhode Island. CVS Rx Services, Inc.'s principal executive and administrative offices are located in Woonsocket and have been since before the filing of this lawsuit. The majority of CVS Rx Services, Inc.'s corporate officers and senior executives whom direct, control, and coordinate its operations are also located at its corporate headquarters in Woonsocket, Rhode Island. As a result, nearly all of CVS Rx Services, Inc.'s corporate decisions are made in Rhode Island, including operational, executive, administrative, and policymaking decisions.

15. Therefore, CVS Rx Services, Inc. is a citizen of New York and a citizen of Rhode Island.

16. "Doe" Defendants fictitiously named, but not served, are not joined in this Petition and Notice of Removal, and shall be disregarded for the purpose of determining removal jurisdiction. 28 U.S.C. § 1441(b)(1). In determining whether diversity of citizenship exists, only the named defendants are considered. *Newcombe v. Adolf Coors Co*. 157 F. 3d 686, 690-691 (9th Cir. 1998).

17. Accordingly, complete diversity exists between Plaintiff and CVS.

## IV. THE AMOUNT IN CONTROVERSY EXCEEDS THE $75,000 JURISDICTIONAL MINIMUM

18. The jurisdictional minimum amount that must be in controversy, $75,000, was satisfied at the time of the filing of this action, and is still satisfied by the facts set forth herein and described more specifically below. 28 U.S.C. § 1332(a) ("[D]istrict courts … have original jurisdiction of all civil actions where the matter

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between … citizens of different States."); *see also Matheson v. Progressive Specialty Ins., Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000").

19. CVS discusses below the allegations in Plaintiff's Complaint solely to demonstrate that the amount in controversy in this matter exceeds $75,000. CVS denies that Plaintiff is entitled to any damages and that Plaintiff will be able to recover on any of her theories of recovery.

20. In assessing the amount in controversy, this Court may, for removal purposes, look to the removal papers and the pleadings, as well as summary judgement type evidence. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

### A. The Amount in Controversy is Measured by the Damages and Attorneys' Fees "At Stake" in the Litigation, to which the Plaintiff Would be Entitled if She Prevails

21. In measuring the amount in controversy for purposes of diversity jurisdiction, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quotations omitted, emphasis added). In addition, the Court should aggregate damages in determining whether the controversy exceeds $75,000. *See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) ("aggregation is permitted when a single plaintiff seeks to aggregate two or more of her own claims against a single defendant") (internal quotations omitted).

22. Additionally, as the Ninth Circuit has recently clarified, "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)[; but] rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez*, 888 F.3d at 414–15.

23. Here, conservatively, Plaintiff's Complaint alleges at least **$115,000** in unpaid overtime, meal period premiums, rest period premiums, wage statement penalties, and waiting time penalties.

**B.** **Economic Damages**

24. Plaintiff alleges that her "hourly rate at the time her employment ended … was $73.02 an hour." **Complaint at ¶16.**

  **1.** **Overtime**

25. In her complaint, Plaintiff asserts several overtime-related allegations:

   a. "During all times relevant to this Complaint, Plaintiff was required to perform work "off the clock" for Defendant, on an almost daily basis, for which she was not compensated." **Complaint at ¶3.**

   b. "Plaintiff and other Pharmacy Managers were required to work considerable hours off the clock for which they were not compensated." **Complaint at ¶21.**

   c. "During the Covered Period Plaintiff often worked more than eight hours, and on occasion more than twelve hours, in a single day for which she was entitled to daily overtime premiums. Additionally, Plaintiff also worked more than 40 hours in a week and/or worked a seventh shift in a week, for which she was entitled to weekly overtime premiums. Defendants did not pay Plaintiff all of the overtime premium wages she was properly owed." **Complaint at**

¶28.

26. Accordingly, under a conservative estimate (3 hours of unpaid overtime per week), Plaintiff's Complaint alleges at least $65,000 in unpaid overtime damages [($73.02 x 1.5) x (3 OT hrs/wk) x (200 wks in liability period)].

### 2. Meal Periods

27. In her complaint, Plaintiff asserts several meal period-related allegations:

    a. "Defendants also prevented Plaintiff from taking timely off-duty meal periods and rest breaks as required by law." **Complaint at ¶3.**

    b. "During the Covered Period, Plaintiff often did not receive timely, off-duty meal periods and rest breaks of the proper duration and frequency. In fact, Plaintiff was rarely if ever permitted to take off duty rest breaks due to the demands of the job and Defendants' failure to adequately staff her store. For the same reasons, Plaintiff was rarely permitted timely, uninterrupted, off duty meal periods of the proper duration. In order to try to satisfy the demands of the job, and given Defendants' scheduling and labor budget practices, Plaintiff was routinely required to perform work while clocked out for her meal periods or to take fewer than thirty minutes for the meal period." **Complaint at ¶29.**

    c. "During her employment, Plaintiff routinely worked for Defendant without being provided with a timely thirty-minute uninterrupted, duty-free meal period during meal period eligible shifts, and without being paid one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided." **Complaint at ¶30.**

28. Accordingly, under a conservative estimate (1 missed meal period per week), Plaintiff's Complaint alleges at least $14,604 in meal period premiums

[($73.02) x (1 missed meal period per week) x (200 wks in liability period)].

### 3. Rest Periods

29. In her complaint, Plaintiff alleges: "During her employment, Plaintiff routinely worked for Defendant without being provided with a timely uninterrupted, duty-free ten-minute rest period every four hours worked or major fraction thereof, and without being paid one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period was not provided." **Complaint at ¶31.**

30. Accordingly, under a conservative estimate (1 missed rest period per week), Plaintiff's Complaint alleges at least $14,604 in rest period premiums [($73.02) x (1 missed rest period per week) x (200 wks in liability period)].

### 4. Wage Statements

31. In her complaint, Plaintiff alleges: "Plaintiff was not provided with accurate wage statements. For example, since she was not compensated for off the clock work, Defendants' wage statements did not accurately report her hours worked or gross/net wages owed." **Complaint at ¶33.**

32. Accordingly, Plaintiff alleges $4,000 in wage statement penalties. *See* **Labor Code § 226(e)(1).**

### 5. Waiting Time Penalties

33. In her complaint, Plaintiff alleges: "Plaintiff's employment with Defendants ended on or around January 3, 2020. Due to the above violations, Defendants did not, and have not, paid Plaintiff all wages owed to her. As a result, Plaintiff is entitled to late payment penalties under Labor Code Section 201-203." **Complaint at ¶33.**

34. Accordingly, Plaintiff alleges at least $17,524.80 in Labor Code section 203 penalties [($73.02) x (8 hrs/day) x (30 days). *See* **Labor Code § 203.**

### C. Attorneys' Fees

35. Where an underlying statute authorizes an award of attorneys' fees,

1  such potential fees may be included in calculating the amount in controversy. *See*
2  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Here, Plaintiff
3  seeks attorneys' fees for her Labor Code claims (*See* Complaint, Prayer for Relief).

4  36. As the Ninth Circuit explained in *Chavez*, when determining the amount in controversy, attorneys' fees are calculated based on the *total* possible recovery, and not just fees incurred as of the time of removal. *Chavev supra* 888 F.3d at 417 ("That the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy."); *Lucas v. Michael Kors (USA), Inc.*, No. 2018 WL 2146403, at *11 (C.D. Cal. 2018) ("The broad holding [in *Chavez*] strongly suggests that the Ninth Circuit would find it appropriate to consider post-removal attorneys' fees. Therefore, the Court agrees that unaccrued post-removal attorneys' fees can be factored into the amount in controversy."); *Bernstein v. BMW of N. Am., LLC*, 2018 WL 2210683, at *2 (N.D. Cal. 2018) ("The Ninth Circuit's recent decision in *Chavez* . . . holding that the amount in controversy is what is at stake in the litigation at the time of removal suggests that the attorneys' fees in the context of the amount in controversy requirement should be calculated based on the total possible recovery and not just the fees incurred to date—resolving a previously unresolved question.").

20  37. Here, if attorneys' fees are awarded, the hours incurred during the case investigation, discovery, trial prep, and trial phases of this litigation – even under the most efficient circumstances – will likely result in an award exceeding the $75,000 jurisdictional threshold.

24  V.  **REMOVAL IS TIMELY**

25  38. This Petition and Notice of Removal is timely pursuant to 28 U.S.C. section 1446(b) because this action is being removed within thirty (30) days of the date when CVS received the Summons and Complaint. 28 U.S.C. § 1446(b)(1); *see* Exh. "A".

## VI. CONCLUSION

39. For the reasons stated above, this Court has jurisdiction under 28 U.S.C. section 1332 because this is a civil action between citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

40. Accordingly, CVS may remove the action to this Court pursuant to 28 U.S.C. sections 1332 and 1441. CVS respectfully requests that this Court exercise its removal jurisdiction over this action.

DATED: June 19, 2020            PAYNE & FEARS LLP


By:   /s/ Andrew K. Haeffele
DANIEL F. FEARS
ANDREW K. HAEFFELE
PHILIP K. LEM

Attorneys for Defendant CVS RX SERVICES, INC.

4834-7535-9680.1

## PROOF OF SERVICE

*Diane Gailey v. CVS RX Services, Inc.*
<u>United States District Court Case No.</u> 3:20-cv-04086

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is Jamboree Center, 4 Park Plaza, Suite 1100, Irvine, CA 92614.

On June 19, 2020 I served true copies of the following document(s) described as **PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332 AND 1441** on the interested parties in this action as follows:

| | |
|---|---|
| Kevin R. Allen, Esq.<br>ALLEN ATTORNEY GROUP<br>2121 N. California Blvd., Suite 290<br>Walnut Creek, CA 94596<br>Tel: (925) 695-4913<br>Fax: (925) 334-7477<br>Email: kevin@allenattorneygroup.com | Attorneys for Plaintiff<br>DIANE GAILEY |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address tshaw@paynefears.com to the person at the e-mail address listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**[Federal]** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 19, 2020, at Irvine, California.

                               /s/ Terri M. Shaw
                               Terri M. Shaw

PAYNE & FEARS LLP
ATTORNEYS AT LAW
JAMBOREE CENTER, 4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100